UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

RYAN JHAGROO,

       Plaintiff,

  -v-                                                                                   No. 16 CV 3426-LTS-SDA

OFFICER BROWN (JOHN DOE) et al.,

       Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Plaintiff Ryan Jhagroo ("Mr. Jhagroo"), proceeding pro se, brings this action asserting claims under 42 U.S.C. section 1983 ("Section 1983") stemming from an assault by fellow prisoners that allegedly occurred while he was incarcerated at the Eric M. Taylor Center ("EMTC") on Rikers Island on June 7, 2015.[1] Defendants Correction Officer Brown and Correction Officer Hudson ("Defendants") have moved for summary judgment. (Docket Entry No. 79.) Mr. Jhagroo has also requested the appointment of pro bono counsel. (Docket Entry No. 101.) The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1343(a)(3).

       The Court has considered the submissions of both parties carefully and, for the following reasons, grants in part and denies in part Defendants' motion for summary judgment.

---

[1] In his letters to the Court, Mr. Jhagroo describes a different violent incident which occurred in February of 2019. See, e.g., Docket Entry No. 90. That incident is not part of this lawsuit and is not considered here. If Mr. Jhagroo would like to file a case regarding claims arising from that incident, he should contact the Pro Se Office of this Court.

Mr. Jhagroo's request for the appointment of counsel is denied without prejudice to renewal in connection with settlement discussions and/or trial preparation.

### BACKGROUND

The following facts are undisputed unless otherwise noted.[2] At all relevant times, Mr. Jhagroo was a prisoner in New York City DOC custody on Rikers Island. (Docket Entry No. 81 ("Def. 56.1"), at ¶ 2.) On June 7, 2015, Mr. Jhagroo told Officer Brown that he was having chest pains and asked to be escorted to the medical clinic. (Id. at ¶ 3.) Officer Brown called Captain Lee, who walked Mr. Jhagroo to the medical clinic. (Id. at ¶ 4.) Mr. Jhagroo told the physician that he had been attacked by 10 other prisoners, had lost consciousness, and had sustained injuries to his head, face, and ribs. (Declaration of Geoffrey M. Stannard, Exhibit D ("Exh. D"), at DEF_139.) The physician recorded that Mr. Jhagroo had a "tender nose, periorbit swelling, abrasion [of the] face and nose," a tender neck, and "tender lower left ribs," but described him generally as "well appearing" with "no acute distress." (Id. at DEF_140.) Mr. Jhagroo was transported to Elmhurst Hospital's emergency room in a neck collar on a hardboard, (id.), where he reiterated that he had been "attacked by other inmates and was kicked and punche[d] in the face." (Declaration of Geoffrey M. Stannard, Exhibit E ("Exh. E"), at DEF_98.) The Elmhurst Hospital physician recorded abrasion on his face and bruising around his right eye. (Id. at DEF_99.) He was diagnosed with head trauma as well as neck, shoulder, and chest pain, but imaging showed no fractures to his head, neck, shoulder, or ribs. (Id. at

---

[2] Facts recited as undisputed are identified as such in Defendants' statement pursuant to S.D.N.Y. Local Civil Rule 56.1 (Docket Entry No. 81) or are drawn from evidence as to which there is no nonconclusory contrary factual proffer.

DEF_110.)  He was again described as "well-appearing" with "no apparent distress," and prescribed ibuprofen.  (Id. at DEF_99-100.)

The investigating captain's injury report, dated June 11, 2015, concluded that Mr. Jhagroo's injuries were likely self-inflicted, based on reports by Officers Brown and Hudson stating that they did not witness Mr. Jhagroo being attacked on June 7, 2015.  (Def. 56.1, at ¶ 19; Declaration of Geoffrey M. Stannard, Exhibit C, ("Exh. C"), at DEF_2.)  Prisoners in the same housing unit also submitted statements claiming no one attacked Mr. Jhagroo on that day.  (Def. 56.1, at ¶ 20; Exh. C, at DEF_9-12.)

On July 1, 2015, Mr. Jhagroo filed an Inmate Grievance and Request Program ("IGRP") Statement Form stating he had been attacked in the presence, and at the direction, of Officer Brown.  (Def. 56.1, at ¶ 26; Declaration of Geoffrey M. Stannard, Exhibit F, ("Exh. F"), at 1.)  The same day, he signed a form titled Disposition Form ("the Form").  (Exh. F, at 1.)  The Grievance Supervisor who countersigned the Form categorized Mr. Jhagroo's grievance as a complaint of "staff-on-inmate non-sexual harassment," informed him that "staff complaint[s] are submissions not subject to the IGRP process," and advised him that his grievance had "been forwarded to the Deputy Warden for investigation."  (Id. at 1-2.)  Mr. Jhagroo checked the box stating that he accepted the proposed resolution.  (Id. at 1.)

Mr. Jhagroo's account of the events of June 7, 2015, as set forth in his sworn complaint and deposition, differs from the statements of Officers Brown and Hudson.  Mr. Jhagroo's account is as follows.  He asserts that he was exercising in the back of the housing unit when Officer Brown ordered him to stop working out.  (Exh. B, at 55:3-16.)  Mr. Jhagroo refused and the two began arguing profanely.  (Id. at 57:17-25.)  Eventually, Officer Brown invited Mr. Jhagroo into the bathroom area and removed his badge.  (Id. at 59:7, 60:21.)  Mr.

Jhagroo believed that "in jail, [when] somebody invites you to the bathroom, you're going to fight." (Id. at 59:8-9.) Another prisoner told him to "go in there and fight now" or else the other prisoners would attack him. (Id. at 62:18.) Mr. Jhagroo walked away, and Officer Brown left the bathroom, rebuttoning his shirt and laughing with prisoners who were gang members. (Id. at 65:9, 66:14, 68:6.) Mr. Jhagroo watched Officer Brown speak with those gang members and exchange smiles, handshakes, and head nods. (Id. at 65:10, 67:10, 68:6.) He could not hear what was said, but he saw Officer Brown point towards him. (Id. at 67:24, 83:23.) Then, Mr. Jhagroo states, the other prisoners "got involved[,] after Officer Brown spoke to one of the gang members." (Id. at 66:22-23.)

    A prisoner nicknamed Animale, a member of the bloods gang, came up to Mr. Jhagroo and told him he had to "fight [him] to live in the house." (Id. at 63:17, 69:12-15.) According to Mr. Jhagroo, this happened "after Officer Brown spoke to him, I guess the crowd that he was around, one of his homeboys." (Id. at 69:18-19.) When Mr. Jhagroo refused to fight, some other prisoners pushed him down and began beating him. (Id. at 70:2-17.) At that point, Mr. Jhagroo saw Officer Hudson "sitting in the bubble acting like it was a normal day (id. at 78:16-17), and Officer Brown "looking at the whole scene, like he was in the movie theaters just watching the UFC fight." (Id. at 70:21-22.) Mr. Jhagroo alleges that he was punched, kicked, and beaten with a chair and table by 10-15 prisoners. (Id. at 70:2-19, 72:23.) Other than Animale, Mr. Jhagroo was not able to identify the prisoners involved in the assault. (Id. at 71:25.) In his complaint, Mr. Jhagroo alleges he was attacked for 15-20 minutes, but he stated in his deposition that he could not recall how long it lasted, but that it "felt like forever" and that at one point he lost consciousness. (Id. at 73:7-11; Docket Entry No. 2, at 3.) He tried to protect himself with his hands and feet, and by covering his head, but he was scratched in the face by

Animale's fingernails. (Exh. B, at 72:11, 76:4.) He claimed that his wrist was smashed by the table and became swollen as a result, and that he ached all over afterwards, particularly in his back. (Id. at 75:8-17.) He did not have any broken bones or a broken nose. (Id. at 75:13-16.) After the assault, he heard Officer Brown "laughing with all the inmates" and saw Officer Hudson sitting in the bubble in full view of the entire housing unit, just as she was before the assault. (Id. at 77:7-78:17, 80:24-81:15.) Neither Officer Brown nor Officer Hudson intervened to stop the assault, and the prisoners eventually walked away. (Id. at 74:2-4.)

According to the incident report filed by Officer Hudson, she did not "observe or witness any unusual incidents or injuries involving inmate [Jhagroo]". (Exh. C, at DEF_4.) Officer Brown stated in his incident report that he "had no interaction with inmate [Jhagroo]" and "did not observe any unusual incident or injury." (Id. at DEF_6.) However, in Defendants' statement submitted pursuant to Rule 56.1, the parties do not dispute that Mr. Jhagroo approached Officer Brown on the evening of July 7, 2015, complained that he was in pain, and requested an escort to the medical clinic, at which time Officer Brown called Captain Lee to escort Mr. Jhagroo to the clinic. (Def. 56.1, at ¶ 3-4.)

## DISCUSSION

Rule 56 Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is to be granted in favor of a moving party where that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citation omitted). In evaluating a motion for summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

Exhaustion

Defendants argue first that Mr. Jhagroo failed to exhaust his administrative remedies. "Failure to exhaust administrative remedies is an affirmative defense under the PLRA." Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016). Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.S. § 1997e(a) (LexisNexis 2009). Exhaustion is required by the PLRA for "all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516, 532 (2002).

In June 2015, the time of the alleged assault, prisoners at EMTC were required to file grievances through the NYC DOC's Inmate Grievance and Request Program ("IGRP"). N.Y.C. Dep't of Corr., Directive 3376 (effective Sept. 10, 2012), available at https://www1.nyc.gov/assets/doc/downloads/directives/Directive_3376_Inmate_Grievance_Request_Program.pdf ("Directive 3376"). "Consistent with common practice in this District, the Court takes judicial notice" of the IGRP procedures. Leneau v. City of New York, No. 16-CIV-0893 (RA), 2018 WL 583120, at *2 n.3 (S.D.N.Y. Jan. 26, 2018).

It is undisputed that Mr. Jhagroo was required by the IGRP procedures to submit, and did submit, an IGRP Statement Form.  Directive 3376 § IV(D)(1).  It is also undisputed that the Grievance Supervisor categorized his complaint as "Staff-on-inmate non-sexual harassment," informed him that "staff complaint[s] are submissions not subject to the IGRP process," and advised him that his complaint "has been forwarded to the Deputy Warden for investigation." (Exh. F, at 1-2.)  The grievance supervisor's response is consistent with the IGRP procedures. See Directive 3376, Appendix A (listing staff-on-inmate non-sexual harassment as an issue that is not subject to the IGRP); § IV(G)(3)(a) ("If the IGRP staff determines that the condition or issue in the inmate's IGRP Statement Form . . . is not subject to the IGRP process . . . the grievance supervisor shall provide this disposition to the inmate on the IGRP Disposition Form . . . along with information regarding the entity to which the matter was referred, and what process is available to address the condition or issue."); see also Taylor v. City of New York, No. 16-CIV-7857 (NRB), 2018 WL 1737626, at *4 (S.D.N.Y. Mar. 27, 2018) (denying motion to dismiss because physical assault claim was "explicitly excluded from the IGRP process"); Taylor v. Swift, 21 F. Supp. 3d 237, at 243 (E.D.N.Y. 2014) (holding that a complaint "that prison officials stood idly by while [Plaintiff] suffered an 'assault . . . by [other] inmates'… fall[s] outside the scope of this institution's grievance procedure.").

The Form demonstrates, and Directive 3376 confirms, that the IGRP was not an applicable administrative remedy for Mr. Jhagroo's complaint.  Defendants' argument to the contrary – that he was required by the inapplicable IGRP to appeal the Grievance Supervisor's decision – is contradicted by the Form itself.  Likewise, Defendants' argument that Mr. Jhagroo failed to exhaust the IGRP by accepting the grievance supervisor's decision as an informal resolution of his grievance is unavailing because the Form shows that Mr. Jhagroo did not accept

a resolution of his underlying complaint. He merely accepted a representation that his complaint would be properly investigated by the Deputy Warden.

Defendants have not identified any procedures that were available to Mr. Jhagroo once his complaint was forwarded to the Deputy Warden. "Without information on the administrative process that controls once a matter is referred outside of the IGRP, the Court only can speculate as to what it might be or whether one even exists." Drew v. City of New York, No. 16-CIV-0594 (AJP), 2016 WL 4533660, at *7 (S.D.N.Y. Aug. 29, 2016). Accordingly, Defendants have not demonstrated that Mr. Jhagroo failed to exhaust his available administrative remedies.

Defendants' Argument Based on
Jeffreys v. City of New York

Defendants next argue that Mr. Jhagroo's account of the alleged assault, as put forth in his sworn complaint and deposition, is so "unreliable that [it] cannot create an issue of fact because no rational jury could believe [it]." (Docket Entry No. 82, at 8.) Recognizing that the Court generally may not "weigh evidence or assess the credibility of witnesses" on summary judgment, Defendants cite Jeffreys v. City of New York for the proposition that the Court may grant summary judgment when a plaintiff relies almost exclusively on his own inconsistent and improbable testimony to create a dispute of material fact. (Id. at 7) (citing 426 F.3d 549, 554 (2d Cir. 2005)).

The plaintiff in Jeffreys claimed that a police officer assaulted him and threw him out a third-story window. The record showed that Plaintiff had confessed to having jumped out of the third-story window on three prior occasions, including in reports to medical personnel on

the day of the incident, an interview with police two days later, and a risk screening with the New York Department of Corrections later that month. 426 F.3d at 552. However, in his deposition and affidavit, Plaintiff claimed he had been thrown out of the window by the police officer. The district court granted summary judgment and dismissed the complaint, holding that no reasonable jury could find for the Plaintiff because no reasonable jury could believe the Plaintiff's account. The Second Circuit affirmed, holding that summary judgment was appropriate because no "reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [the] complaint." Id. at 555 (citing Schmidt v. Tremmel, No. 93-CIV-8588 (JSM), 1995 WL 6250, at *3 (S.D.N.Y. Jan. 6, 1995)). However, the Second Circuit cautioned that the circumstances presented were "rare" and depended upon the finding of the district court that nothing in the record supported the Plaintiff's allegations other than his own "contradictory and incomplete testimony." Id. at 554-555 (citing Aziz Zarif Shabazz v. Pico, 994 F. Supp. 460, 470 (S.D.N.Y. 1998) ("when the facts alleged are so contradictory that doubt is cast upon their plausibility, [the court may] pierce the veil of the complaint's factual allegations . . . and dismiss the claim.") (internal citation omitted)). The Jeffreys court also noted that "the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." Id. at 554.

  The Second Circuit has said that "Jeffreys does not authorize district courts to 'engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment.'" Matheson v. Kitchen, 515 F. App'x 21, at *24 (2d Cir. 2013) (citing Rojas, 660 F.3d at 106). Accordingly, courts in this circuit apply Jeffreys at summary judgment to dismiss claims that are uncorroborated and contradictory. Jeffreys is invoked to prevent uncorroborated

testimony or a self-serving affidavit from defeating summary judgment when it contradicts the party's own prior statements.  See, e.g., Rojas, 660 F.3d at 106 (rejecting new allegations that directly contradicted Plaintiff's prior sworn statements and judicial admissions); Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 529 (2d Cir. 1985) (affirming district court's decision to disregard Defendant's "affidavits seeking to controvert its own pleading"); Trans–Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566, 572 (2d Cir. 1991) (finding no genuine issue of material fact where post-trial sworn statements disputed declarant's prior trial testimony).  The Second Circuit rejected an argument to apply this "rare circumstance" where there was "no real, unequivocal, and inescapable contradiction of the sort . . . contemplated in Jeffreys and Rojas."  Rivera v. Rochester Genesee Regional Transp. Authority, 743 F.3d 11, at *23 (2d Cir. 2014).  One court in this circuit refused to apply Jeffreys without a showing that the non-moving party's collective testimony was internally contradictory.  Harris v. Stockwell, No. 9:14-CIV-0404 (GTS/ATB), 2016 WL 7176608, at *4 (N.D.N.Y. Dec. 9, 2016) (denying summary judgment where the evidence consisted of Plaintiff's deposition testimony and sworn complaint, asserting that "Defendants punched and kicked him in the face, back and ribs for approximately five minutes").

Unlike the accounts of the plaintiffs in Jeffreys, Rojas, and Bellefonte, Mr. Jhagroo's reports of the assault have remained consistent over time.  Moreover, the medical records, both from the prison clinic and Elmhurst Hospital, show that Mr. Jhagroo reported being punched, kicked, and knocked down by blows to the head in a fight with other prisoners, and that he had some physical injuries.  Mr. Jhagroo's grievance and sworn complaint are also consistent with his deposition in their description of the assault presented therein.  Thus, this is not a case in which proffered testimony contradicts the party's own prior statements.  Instead, Defendants

argue that Mr. Jhagroo's account is contradicted by the reports of Officers Brown and Hudson, and the statements of four prisoners, which assert that no fight occurred involving Mr. Jhagroo on the date in question. Where Defendants "allege that there was no incident, and plaintiff claims he was assaulted," "the issue is essentially one of credibility." Harris, 2016 WL 11478228, at *7 (adopted by 2016 WL 7176608). The credibility of the competing accounts of the events of June 7, 2015, is a matter reserved for the jury and is inappropriate for resolution at the summary judgment stage.

Finally, Defendants argue that medical evidence showing Mr. Jhagroo sustained minimal injuries contradicts his description of the assault. Contrary to Defendants' argument, there is evidence in the record upon which a reasonable factfinder could find corroboration for Mr. Jhagroo's account and base a verdict in his favor. Mr. Jhagroo asserts that he was punched, kicked and beaten with a chair and table by 10-15 prisoners for what he said "felt like forever."[3] He said that he avoided a broken nose or bones and protected himself with his hands and feet and by covering his head, but that he was scratched in the face by his assailant's fingernails, sustained a swollen wrist, and thereafter suffered from aches in his back. With the sole exception of the alleged swollen wrist, the medical reports submitted by Defendants corroborate Mr. Jhagroo's description of his injuries. A reasonable jury could infer that Mr. Jhagroo was mostly successful in protecting himself with his hands and feet, as he says he did, or that the manner of the assault was less severe than he recalled in his deposition. Because Jeffreys does

---

[3] While the complaint alleges the assault lasted 15-20 minutes, Mr. Jhagroo asserted at his deposition that he lost consciousness during the assault and that it "felt like forever." (Exh. B, at 73:7-11.) Because the Court resolves all ambiguities and draws all inferences in the non-moving party's favor at summary judgment, the Court infers that the assault lasted a length of time that was sufficient for the events to have occurred as described by Mr. Jhagroo.

not authorize the Court to "engage in [a] searching, skeptical analys[is]" of Mr. Jhagroo's testimony, Rojas, 660 F.3d at 106, the Court is required at this summary judgment stage to infer that an attack occurred and that Plaintiff succeeded in avoiding more serious injury.

For the forgoing reasons, the Court holds that Mr. Jhagroo's account of the alleged assault is not so uncorroborated, implausible, and internally contradictory that no reasonable jury could believe that it occurred at all.

Denial of Medical Care

To establish an Eighth Amendment violation, a prisoner must show: "'(1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities[;] and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety.'" Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012) (quoting Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001)). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Hudson v. Palmer, 468 U.S. 517, 526–527 (1984)). To sustain an Eighth Amendment claim based on a denial of medical care, the deprivation must be objectively "'sufficiently serious' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain,' exists." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)). Subjectively, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Here, the record before the Court does not satisfy either the objective or subjective prong.  Construing the evidence and drawing all inferences in Mr. Jhagroo's favor, his most severe injuries were scratches to his face and bruising around his right eye.  He sustained no broken bones and was described by physicians at the EMTC clinic and at Elmhurst as "well appearing" with "no acute distress."  (Exh. D, at DEF_140; E, at DEF_99.)  Accordingly, there is no evidence that Mr. Jhagroo's condition was one that "may produce death, degeneration, or extreme pain."  Furthermore, the undisputed facts demonstrate that Officer Brown did not disregard an excessive risk posed by Mr. Jhagroo's injuries both because there is no evidence that the injuries posed an excessive risk and because Officer Brown acted promptly after the injuries were brought to his attention.  Once Mr. Jhagroo reported chest pain, Officer Brown called Captain Lee to escort Mr. Jhagroo to the medical clinic.  Mr. Jhagroo was treated by physicians at EMTC as well as Elmhurst hospital, and was prescribed medication to alleviate his pain.  Therefore, there is no genuine dispute of material fact as to whether Officer Brown disregarded an urgent condition that risked death, degeneration, or extreme pain.  Defendants are entitled to judgment as a matter of law dismissing the denial of medical treatment claim against them.

Failure to Protect

"The failure of custodial officers to employ reasonable measures to protect an inmate from violence by other prison residents has been considered cruel and unusual punishment."  Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985).  Under Section 1983, prison officials are liable for harm incurred by a prisoner if the officials acted with "deliberate indifference" to the safety of the prisoner.  See Morales v. New York State Dep't of

Corrections, 842 F.2d 27, 30 (2d Cir. 1988).  The objective prong of the deliberate indifference standard requires that the prisoner be incarcerated under conditions posing a "substantial risk of serious harm."  Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 620 (2d Cir. 1996).  The subjective prong requires that the prison official have knowledge that the prisoner faces a substantial risk of serious harm, and that the official disregard that risk by "failing to take reasonable measures to abate the harm."  Id.  A prison official exhibits deliberate indifference to a substantial risk of serious harm where the official observes an assault in progress and, rather than take reasonable steps to intervene, "st[ands] by and let[s] the attacker further injure [the prisoner]."  Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974).

Here, there is a dispute as to whether an assault took place.  Whether Officers Brown and Hudson observed the assault is also disputed.  Defendants proffer statements by the officers involved, an Investigating Captain, and other prisoners which dispute Mr. Jhagroo's allegations as to the occurrence of an assault and the source of his injuries.  Mr. Jhagroo alleges in his deposition and sworn complaint that he was assaulted by a group of prisoners for an extended period of time, and that both Defendants watched the assault take place.  Specifically, he asserts he was knocked to the ground, punched, kicked, and beaten with a table and chair by 10-15 prisoners for an extended period of time.  It is undisputed that neither Officer Brown nor Hudson intervened in any assault.  An assault such as that described by Mr. Jhagroo could undoubtedly have exposed Mr. Jhagroo to a substantial risk of harm.  See Vincent v. Sitnewski, No. 10-CIV-3340 (TPG), 2013 WL 5299027, at *3 (S.D.N.Y. Sept. 20, 2013) (holding that a substantial risk of harm was presented by a five-minute fight among prisoners which terminated only at the hands of other prisoners).

Mr. Jhagroo alleges that, when he was first attacked, Officer Brown was "[l]ooking at the whole scene, like he was in the movie theaters just watching the UFC fight." (Exh. B, at 70:21-22.) He further alleges that, immediately after the fight, he heard Officer Brown laughing with the prisoners. As for Officer Hudson, Mr. Jhagroo alleges that she was in the housing unit's bubble during the assault, that the bubble was visible from everywhere in the unit, that he saw her there before and after the assault, and that, after the assault began, he saw her "sitting in the bubble acting like it was a normal day." (Exh. B, at 78:16-17.) At this summary judgment stage, the Court infers from these proffered facts that Officers Brown and Hudson both observed the assault on Mr. Jhagroo. Because there are disputes of material fact as to whether there was an assault and whether Defendants knew that Mr. Jhagroo faced a substantial risk of serious harm from a prisoner assault and failed to take reasonable measures to prevent that harm, Defendants are not entitled to summary judgment dismissing the claim that they failed to protect Mr. Jhagroo.

Incitement to Violence

Mr. Jhagroo alleges that Officer Brown told the other prisoners to assault him. (Docket Entry No. 2; Exh. B, at 80:19.) "[T]here is no question that instructing or encouraging other [prisoners] to attack an inmate poses an objectively serious risk of harm." Smith v. Miller, No. 15-CIV-9561 (NSR), 2017 WL 4838322, at *12 (S.D.N.Y. Oct. 23, 2017). There is also no question that "[i]ntentionally exposing an inmate to the risk of harm… [through violence] with no penological purpose is indicative of deliberate indifference to the inmate's safety" in violation of the Eighth Amendment to the U.S. Constitution. Mirabella v. Correction Officer O'Keenan, No. 15-CIV-142S, 2016 WL 4678980, at *4 (W.D.N.Y. Sept. 7, 2016).

Here, Mr. Jhagroo proffers the following facts that are sufficient to support an inference that Officer Brown intentionally exposed Mr. Jhagroo to a risk of an assault by other prisoners: Mr. Jhagroo and Officer Brown had a profanity-laced disagreement over where prisoners could exercise; Officer Brown invited him into the unit's bathroom and removed his badge; an invitation to the bathroom is an invitation to fight; when Mr. Jhagroo declined, Officer Brown spoke with prisoners who were gang members, laughed with them, exchanged handshakes and head nods; though no words were overheard, Mr. Jhagroo saw Officer Brown pointing at him just before he was assaulted by a bloods gang member. Regarding whether the assailants were the same prisoners who had spoken with Officer Brown moments earlier, Mr. Jhagroo's deposition is susceptible to two interpretations. Either Officer Brown spoke with gang members generally, or he spoke with Animale, the same bloods gang member who assaulted Mr. Jhagroo. See Exh. B, at 69:18-20. Because the Court is required to resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party at summary judgment, the Court holds that a reasonable jury could infer that Officer Brown instructed Animale, either directly or through other gang members, to assault Mr. Jhagroo after he refused to fight Officer Brown. Thus, there is a dispute of material fact as to whether Officer Brown instructed prisoners to assault Mr. Jhagroo, and Defendants' motion for summary judgment dismissing that claim is denied.

As to Officer Hudson, Mr. Jhagroo has proffered no facts from which the Court could draw an inference that she instructed or encouraged the assault. Accordingly, Defendants' motion for summary judgment is granted as to the claim that Officer Hudson incited prisoners to assault Mr. Jhagroo.

Qualified Immunity

Defendants have raised the affirmative defense of qualified immunity, which protects governmental officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  "[Q]ualified immunity protects government officials when they make 'reasonable mistakes' about the legality of their actions."  Doninger v. Niehoff, 642 F.3d 334, 353 (2d Cir. 2011) (internal citation omitted).

Relevant to Mr. Jhagroo's surviving claims is the clearly established duty of prison officials to protect prisoners from violence at the hands of other prisoners.  See Farmer, 511 U.S. at 833.  Likewise, those charged with the protection of prisoners are clearly prohibited from intentionally causing prisoners to assault one another.  Upon the facts alleged by Plaintiff, no reasonable correction officer would mistake Defendants' constitutional obligation to take reasonable steps to stop the assault once they saw it begin.  A correction officer's decision to stand and watch a fight between prisoners "like he was in the movie theaters," (Exh. B, at 70:21-22), act "like it was a normal day" (Exh. B, at 78:16-17), or actively facilitate the violence, is not a reasonable mistake as to an officer's constitutional duty, but a willful dereliction.  Accordingly, because there is a genuine factual dispute as to whether the events occurred as alleged by Plaintiff, Officer Brown is not entitled to summary judgment granting qualified immunity on the claim that he incited violence against Mr. Jhagroo, and neither Defendant is entitled to summary judgment granting qualified immunity on the claims that they failed to protect Mr. Jhagroo from violence.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted as to Mr. Jhagroo's claims of denial of medical care and his claim of incitement to violence by Officer Hudson, but denied as to the claim of incitement to violence by Officer Brown and as to the claims of failures to protect by both Defendants.

Mr. Jhagroo's request for the appointment of counsel is denied without prejudice to renewal in connection with settlement discussions and/or trial preparation.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

This matter remains referred to Magistrate Judge Aaron for settlement negotiations and pre-trial preparation. Defense counsel is directed to contact Judge Aaron's chambers to arrange a settlement conference.

Docket Entry No. 79 is resolved.

SO ORDERED.

Dated: New York, New York
January 27, 2020

_Laura Taylor Swain_____
LAURA TAYLOR SWAIN
United States District Judge

Copy mailed to:  Ryan Jhagroo, #17-R-1739
6514 Rt. 26
Mohawk Correctional Facility
P.O. Box 8451
Rome, NY 13442